UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CAONAISSA WON,

Plaintiff,

- against -

AMAZON.COM SERVICES LLC,

Defendant.

Case No.: 20-cv-2811

**FIRST AMENDED COMPLAINT**

*Jury Trial Demanded*

Plaintiff Caonaissa Won ("Plaintiff"), by her attorneys, Virginia & Ambinder, LLP alleges upon knowledge as to herself and upon information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

1. This action is brought against AMAZON.COM SERVICES LLC ("Defendant" or "Amazon") to recover for violations of the New York City Human Rights Law, Administrative Code of the City of New York §8-101 *et seq.* ("NYCHRL") for wrongfully discriminating and retaliating against Plaintiff based on her status as a caregiver and the NYCHRL, New York State Human Rights Law, Executive Law § 296 *et seq*. ("NYSHRL"), and the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 USC §§ 4301-4335 *et seq.* ("USERRA") for wrongfully discriminating and retaliating against Plaintiff and failing to reemploy her based on her military status and uniformed status.

2. Plaintiff has initiated this action seeking loss of past and future earnings and benefits, compensatory damages, punitive damages, interest, liquidated damages, attorneys' fees, and costs.

## JURISDICTION AND VENUE

3. Venue for bringing this action in the Eastern District of New York under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of New York.

4. Jurisdiction of this Court is invoked pursuant to the USERRA, 38 U.S.C. § 4323(b)(3), and 28 U.S.C. §§ 1331 and 1337. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 for claims brought under the NYSHRL and NYCHRL.

5. Plaintiff demands that a jury trial be held for this action.

## PARTIES

6. Plaintiff is a resident of the State of New York and was formerly employed by Defendant.

7. Upon information and belief, Amazon.com Services, Inc. was a Delaware corporation that was formerly registered to do business in New York, with a principal place of business in New York.

8. Upon information and belief, Defendant Amazon.com Services LLC is a Delaware limited liability company registered to do business in New York, with a principal place of business in New York.

9. Plaintiff was employed by Amazon.com Services, Inc. throughout her employment, from approximately July 1, 2019 until about September 6, 2019.

10. In approximately December 2019, after Plaintiff's employment ended, Amazon.com Services, Inc. changed their corporate name to Amazon.com Services LLC and has been operating as an LLC since that time.

11. Defendant Amazon.com Services LLC became authorized to conduct business in

New York State in approximately January 2020.

12. Defendant employed more than 4 employees during all relevant times, and was Plaintiff's employer as defined under the NYSHRL and NYCHRL.

13. Defendant was responsible for the firing and hiring of Plaintiff, and controlled the terms and conditions of her employment including her rate of pay, schedule, promotions, discipline, and raises.

14. Defendant was Plaintiff's employer within the meaning of 38 USC §§ 4303(4)(A).

## STATEMENT OF FACTS

15. Plaintiff worked at Amazon as a fulfilment associate in the shipping department at an Amazon facility in New York State from approximately July 1, 2019, until she was wrongfully terminated on or about September 6, 2019.

16. Plaintiff was paid approximately $17.50 per hour for her work.

17. At all relevant times, Plaintiff was, and remains, an Active Duty member of the United States Army Reserve.

18. Plaintiff falls within a protected class based on her military status and uniformed service under the NYCHRL and the NYSHRL and qualifies as a member of the uniformed services under the USERRA.

19. During the relevant time period, Plaintiff was the sole custodial parent to her seven-year-old child. As such, Plaintiff falls within a protected class based on her status as a caregiver under the NYCHRL.

20. Plaintiff was qualified for her position at Amazon. Plaintiff was a diligent worker and regularly received positive feedback from her supervisors.

21. Prior to her termination, Plaintiff did not receive any disciplinary actions or warnings whatsoever.

22. At all relevant times, Plaintiff was an employee of Defendant within the meaning of the NYSHRL and the NYCHRL.

23. When Plaintiff began working for Amazon, she was scheduled to work four days per week, Sunday through Wednesday, from 7:15 a.m. until 5:45 p.m., with two fifteen-minute breaks, and one thirty-minute lunch break.

24. On at least four occasions throughout her employment with Amazon, Plaintiff requested that a minor modification be made to her schedule effective September 5, 2019 when her son began attending school.

25. Specifically, Plaintiff asked that she be permitted to arrive to work approximately fifteen minutes later, at 7:30 a.m., and leave approximately fifteen minutes earlier, at 5:30 p.m., in order to be able to drop off and pick up her son from school.

26. Plaintiff even offered to forego her lunch and/or fifteen-minute breaks in order to effectuate this schedule accommodation.

27. Plaintiff's scheduling requests were summarily, and repeatedly, refused by Amazon.

28. When Plaintiff first commenced her employment with Amazon on July 1, 2019 she promptly spoke to the head of the Human Resources Department ("HR") to inquire how she could request a schedule accommodation to pick up and drop off her son when he started school later that year.

29. The head of HR informed Plaintiff that he was not aware that any such accommodation existed, that she would likely have to work part-time, but that she should speak to someone else in HR.

30. Accordingly, on or about July 3, Plaintiff spoke to a female HR representative to request the accommodation for her caregiving responsibilities. However, she was again told that no such accommodation exists for caregivers.

31. Plaintiff subsequently saw a notice posted in the restroom which read that individuals with schedule accommodation requests can speak to HR. As such, on or about July 8, Plaintiff spoke to a different female HR representative. Plaintiff referenced the notice about schedule accommodation requests that she saw posted in the restroom, and inquired about an accommodation for her caregiving responsibilities. The HR representative responded by telling her that no such accommodation exists for childcare purposes, and that schedule accommodations were made solely for religious or educational purposes. The HR representative further stated that there was nothing she could do, and told Plaintiff that she should just speak to other employees and ask for childcare recommendations. The HR representative then stated that if Plaintiff cannot meet the demands of the job, she cannot work for Amazon.

32. Plaintiff again spoke to another female HR representative and was told that nothing could be done, but that she could try to make the request again by submitting her son's school schedule as proof of the requested accommodation. The HR representative said that no further action on Plaintiff's request could be made until the school schedule was received. She also stated she would write a notification e-mail to the HR manager about Plaintiff's request. Plaintiff asked if it was possible for her to be copied on that e-mail as she wanted to ensure the message was sent. However, the HR representative objected, stating it was not possible to include her in the e-mail.

33. Plaintiff repeatedly attempted to retrieve a copy of her son's schedule from the school, but the school appeared to be closed for the summer. As such, Plaintiff could not obtain a copy of the school schedule until after the school opened at the beginning of September.

34. Plaintiff was subsequently required to take a military leave of absence from her employment from August 11, 2019 to August 22, 2019 in order to attend mandatory military training in Virginia.

35. While Plaintiff was in training in Virginia, the military required her to take an additional leave from August 22, 2019 to September 6, 2019.

36. Plaintiff properly requested, and was granted, both military leaves in order to attend to her military duties.

37. Plaintiff's son's first day of school was September 5, 2019.

38. On September 6, 2019, immediately upon returning from her military training, Plaintiff picked up her son from school along with a copy of his schedule to bring to Amazon.

39. The same day, on September 6, Plaintiff went to Amazon to deliver the requested copy of her son's school schedule. Plaintiff entered the Amazon building with her seven-year-old son, and went straight to the security desk to surrender her cell phone in accordance with Amazon's prohibition on entering the building with electronics.

40. After Plaintiff surrendered her cell phone, she proceeded to walk towards the HR desk with her child in hand. Approximately three to five security employees witnessed Plaintiff walk through the security check points and proceed on to HR without raising any issues about Plaintiff's child accompanying her.

41. As Plaintiff arrived to HR and waited online for assistance, she was approached and told that she could not be in that area with her son. Although Plaintiff was confused, she promptly complied and proceeded to exit the area via the metal detectors.

42. Upon exiting, Plaintiff explained that she could not leave her seven-year-old son alone, and that she needed to deliver paperwork for her caregiver accommodation request to the HR department. Plaintiff inquired about what she could do to speak with someone in HR, as this was an important and time-sensitive matter.

43. Plaintiff was then informed that she needed to wait outside of the main entrance gates until someone from HR could speak with her. Accordingly, she waited outside with her son for approximately forty (40) minutes before an individual from HR arrived to speak with her.

44. Plaintiff explained to the HR representative that she was returning from military leave and wanted to drop off proof of her son's school schedule in order to request an accommodation for her caregiving duties which required picking up and dropping off her son at school.

45. The HR representative responded only by asking Plaintiff if she had entered the building with her son. Plaintiff confirmed that she did, but explained that she immediately exited when informed that her son was not permitted to be there. The HR representative then stated that he would be back.

46. The HR representative returned with another HR employee, and the two of them informed Plaintiff that she was terminated effective immediately. Plaintiff was asked to sign a witness statement form.

47. When Plaintiff inquired about the grounds for the termination, she was told that she committed a policy infraction by attempting to enter the facility with her son. Plaintiff stated that

she was never informed that having her young child accompany her to speak with HR was a violation. Nonetheless, she was terminated.

48. Amazon's proffered reason for terminating Plaintiff is pretextual.

49. Amazon terminated Plaintiff because of her status as a caregiver and in retaliation for requesting a schedule change for her caregiving responsibilities, and for taking military leave.

50. Amazon's repeated refusal to alter Plaintiff's schedule for childcare purposes constitutes discrimination based on caregiver status under the NYCHRL.

51. Amazon's stated policy and practice of making schedule modifications solely for educational or religious purposes constitutes a per se violation of the NYCHRL prohibition on discriminating against caregivers.

52. Plaintiff was subjected to discrimination, retaliation, and harassment based on her status as a caregiver and a military member and uniformed service, and for requesting a schedule modification to accommodate her caregiving responsibilities, and taking military leave.

53. Plaintiff's military status and military-related obligations—including her military leave—was a motivating factor for the discriminatory termination.

54. Plaintiff was treated less well because of her caregiver and military status and uniformed service.

55. Defendant discriminated against Plaintiff on the basis of her caregiver status and military status and uniformed service.

56. As a result of the foregoing, Defendant has violated the NYSHRL, NYCHRL and USERRA.

57. As a result, Plaintiff has suffered, and continues to suffer, emotional distress, embarrassment, humiliation, stress, and anxiety.

58. As a further result of the foregoing, Plaintiff has suffered economic damages including but not limited to lost past and future earnings.

59. Plaintiff seeks the recovery of all damages available to her under the law, including compensatory damages, punitive damages, liquidated damages, and all economic damages including lost benefits, backpay, and front pay, plus attorneys' fees and costs.

**FIRST CAUSE OF ACTION AGAINST DEFENDANT:
CAREGIVER DISCRIMINATION UNDER THE NYCHRL**

60. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

61. Pursuant to NYC Adim. Code § 8-107, "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . caregiver status . . . [t]o refuse to hire or employ or to bar or to discharge from employment such person; or . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment."

62. Pursuant to NYC Adim. Code § 8-102, "[t]he term 'caregiver' means a person who provides direct and ongoing care for a minor child or a care recipient." Moreover, "[t]he term 'covered relative' means a caregiver's child."

63. Plaintiff's role as a parent and primary caretaker of her seven-year-old son, to whom she provides direct and ongoing care for, constitutes "caregiver status" within the meaning of the NYCHRL.

64. Defendant knew or should have known of Plaintiff's status as a caregiver.

65. Defendant engaged in an unlawful discriminatory practice by treating Plaintiff less well because of her status as a caregiver, refusing and/or failing to provide Plaintiff with a schedule modification because of her status as a caregiver, by maintaining an unlawful policy and practice

9

of making schedule accommodations solely for educational or religious purposes, and by retaliating against and terminating her due to her status as a caregiver.

66. Defendant's actions were undertaken in conscious disregard of Plaintiff's rights and violate the NYCHRL.

67. Based on the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, for all damages permitted under the law including but not limited to compensatory damages, punitive damages, back pay, front pay, interest, attorneys fees, and costs.

### SECOND CAUSE OF ACTION AGAINST DEFENDANT: UNIFORMED SERVICE DISCRIMINATION UNDER THE USERRA

68. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

69. Pursuant to 38 USC § 4311(a), "[a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation."

70. Pursuant to 38 USC § 4311(b), "[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter [38 USCS §§ 4301 et seq.], . . . or (4) has exercised a right provided for in this chapter [38 USCS §§ 4301 et seq.]."

71. Further, "[a]n employer shall be considered to have engaged in actions prohibited— (1) under subsection (a), if the person's . . . service . . . or obligation for service . . . is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service . . . or obligation for service; or (2) under subsection (b),

10

if the person's . . . exercise of a right provided for in this chapter [38 USCS §§ 4301 *et seq.*], is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's . . . exercise of a right."

72. Plaintiff is a member of the uniformed service.

73. Plaintiff's mandatory military service constitutes an obligation to perform service as a uniformed service member.

74. Defendant violated section 4311 of the USERRA by unlawfully discriminating against Plaintiff in the terms and conditions of her employment, refusing to reemploy her immediately upon her return from mandatory military service, and by terminating her because of mandatory military service.

75. Upon information and belief, Defendant's failure and/or refusal to reemploy Plaintiff, termination of Plaintiff, and discrimination against Plaintiff constitutes a willful violation of the USERRA.

76. Based on the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, for all damages permitted under the law including but not limited to lost earnings and other benefits of employment, back pay, front pay, liquidated damages, interest, attorneys fees, and costs.

**THIRD CAUSE OF ACTION AGAINST DEFENDANT:**
**FAILURE TO REEMPLOY UNDER THE USERRA**

77. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

78. Section 4312 of USERRA provides, subject to certain requirements that are satisfied here, that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of [USERRA]."

79. Plaintiff provided advanced notice to Defendant of her uniformed service.

80. Plaintiff returned to work in a timely manner after conclusion of her uniformed service.

81. Defendant violated section 4311 of USERRA by refusing and/or failing to reemploy her immediately upon her return from mandatory uniformed service and for terminating her.

82. Upon information and belief, Defendant's failure and/or refusal to reemploy Plaintiff in violation of the USERRA was willful.

83. Based on the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, for all damages permitted under the law including but not limited to lost earnings and other benefits of employment, back pay, front pay, liquidated damages, interest, attorneys fees, and costs.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANT:**
**MILITARY STATUS DISCRIMINATION UNDER THE NYSHRL**

84. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

85. Pursuant to the NYSHRL, it is unlawful "[f]or an employer, because of an individual's … military status … to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." NYSHRL § 296(1)(a).

86. Defendant knew or should have known of Plaintiff's military status.

87. Defendant engaged in an unlawful discriminatory practice by treating her less well because of her military status and terminating her due to her military status.

88. Defendant's actions were undertaken in conscious disregard of Plaintiff's rights and violate the NYSHRL.

89. By the foregoing reasons, Defendant is liable to Plaintiff in an amount to be determined at trial, for all damages permitted under the law including but not limited to compensatory damages, punitive damages, back pay, front pay, interest, attorneys fees, and costs.

**FIFTH CAUSE OF ACTION AGAINST DEFENDANT:
UNIFORMED SERVICE DISCRIMINATION UNDER THE NYCHRL**

90. Plaintiff repeats and re-alleges the allegations set forth above.

91. Pursuant to the NYCHRL, it is unlawful "[f]or an employer, because of the actual or perceived … uniformed service … of any person … to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." NYC Admin. Code. § 8-107(1)(a) and § 8-107(1)(a)(2).

92. Defendant knew or should have known of Plaintiff's status as a member uniformed service.

93. Defendant engaged in an unlawful discriminatory practice by treating her less well because of her uniformed service status and terminating her due to her uniformed service status.

94. Defendant's actions were undertaken in conscious disregard of Plaintiff's rights and violate the NYCHRL.

95. By the foregoing reasons, Defendant is liable to Plaintiff in an amount to be determined at trial, for all damages permitted under the law including but not limited to compensatory damages, punitive damages, back pay, front pay, interest, attorneys fees, and costs.

**WHEREFORE**, Plaintiff demands judgment:

(1) on her first cause of action against Defendant in an amount to be determined at trial, plus attorneys' fees and costs;

(2) on her second cause of action against Defendant, in an amount to be determined at trial, plus attorneys' fees and costs;

(3) on her third cause of action against Defendant, in an amount to be determined at trial, plus attorneys' fees and costs;

(4) on her fourth cause of action against Defendant, in an amount to be determined at trial, plus attorneys' fees and costs;

(5) on her fifth cause of action against Defendant, in an amount to be determined at trial, plus attorneys' fees and costs;

(6) such other and further relief the Court deems just and proper.

Dated: New York, New York
March 23, 2021

**VIRGINIA & AMBINDER, LLP**

By: ___/s/ LaDonna M. Lusher_____
LaDonna M. Lusher, Esq.
Alanna Sakovits, Esq.
40 Broad St., 7th Floor
New York, New York 10004
(212) 943-9080
llusher@vandallp.com
*Attorneys for Plaintiff*