UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CAONAISSA WON,

                                    Plaintiff,

        -against-

AMAZON.COM SERVICES LLC,

                                    Defendant.
_____

**MEMORANDUM & ORDER**
**20-CV-2811 (NGG) (LKE)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Caonaissa Won brings this action against Defendant Amazon.com Services LLC ("Amazon" or "Defendant") for alleged violations of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and the Uniform Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4335 ("USERRA") for wrongfully discriminating and retaliating against Plaintiff and failing to reemploy her on the basis of her status as a caregiver and person in uniformed service. (*See* Am. Compl. (Dkt. 16) ¶ 1.) Pending before the court is Defendant's motion for summary judgment and Plaintiff's cross-motion for partial summary judgment, both filed pursuant to Federal Rule of Civil Procedure 56. (Def.'s Not. of Mot. (Dkt. 65); Def.'s Mem. in Supp. of Mot. ("Def.'s SJ Br.") (Dkt. 65-2); Pl.'s Not. of Cross-Mot. (Dkt. 65-21); Pl.'s Mem. in Opposition to Def.'s SJ Br. and in Supp. of Cross-Mot. ("Pl.'s SJ Br. and Opp.") (Dkt. 65-24).) The parties requested oral argument on their respective motions. The parties' requests for oral argument are DENIED. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED as to all counts and Plaintiff's cross-motion for partial summary judgment is DENIED.

1

## I.   BACKGROUND

Amazon is a global retailer that operates a fulfillment center in Staten Island, New York ("JFK8"), where its employees pick, pack, and ship products for its customers. (*See* Def.'s Rule 56.1 Statement ("Def.'s 56.1 Stmt.") (Dkt. 65-1) ¶ 1.) JFK8 is a large building that has heavy machinery at various locations throughout the building, including conveyer belts, pallets, carts, and other machinery generally found in warehouses. (*See* Won Dep. Tr. (Dkt. 65-3) 88:12-21.) Amazon employed Won as an hourly fulfillment associate at JFK8 from late June 2019 until Amazon terminated her employment on September 6, 2019. (*See* Def.'s 56.1 Stmt. ¶ 5; Pl.'s Rule 56.1 Statement ("Pl.'s 56.1 Stmt.") (Dkt. 65-22) ¶ 31.)

Amazon has a Temporary Schedule Adjustments Policy that permits employees to request minor, temporary schedule adjustments for certain reasons, including employees' educational pursuits or religious observance. (*See generally* Sealed Temporary Schedule Adjustments Policy (Dkt. 66-12).) Amazon maintains that it permits employees to request schedule modifications for "care of minor children as required by the Family and Medical Leave Act, the New York State Paid Family Leave Act," and other applicable laws. (Def.'s Responses and Objections to Plaintiff's Notice to Admit (Dkt. 65-39) at 6-7.) However, Amazon does not otherwise offer schedule modifications for employees' childcare obligations. (Pl.'s Rule 56.1 Statement ("Pl.'s 56.1 Stmt.") ¶ 22; Def.'s 56.1 Stmt. ¶ 36.)

Amazon employees at JFK8 are subject to Amazon's security policy. (*See generally* NAFC Security Standards of Conduct ("Security Policy") (Dkt. 65-8).) As relevant here, the Security Policy states that employees should "[n]ever allow another person to enter a secure area using [their] Amazon issued identification." (*Id.* ¶ 3.) Amazon groups security violations "based on the severity of the potential risk to associates or loss

that could result from the behaviors." (*Id.*) Under Amazon's Security Policy, "Category 1 Security Infractions" are actions taken by employees that "directly expose[] the site to immediate risk of severe injury or financial loss." (*Id.* ¶ 4.) "Because of the severe threat these behaviors create, a confirmed Category 1 Security Infraction generally results in corrective action up to and including immediate termination." (*Id.* ¶¶ 4, 4.13 (providing examples of Category 1 infractions, including "[g]ranting or obtaining access to a secured area utilizing another person's credentials").)

Won is a single mother and the sole custodian of her adolescent son, who was seven years old when Amazon terminated her employment in September 2019. (*See* Pl.'s 56.1 Stmt. ¶ 2.) Throughout Won's employment at Amazon, she was an active duty member of the United States Army Reserve, which required her to take leave from her employment to participate in military training. (*See* Pl.'s Opp. to Def.'s 56.1 Stmt. and Counter Statement ("Pl.'s 56.1 Stmt. Opp. and Count.") (Dkt. 65-23) ¶¶ 40, 42-43.) Won worked 40 hours per week at Amazon: 10 hours per day on Mondays, Tuesdays, Wednesdays, and Sundays. (Pl.'s 56.1 Stmt. ¶ 7.) Amazon allowed Won and other employees in her position at JFK8 to take three breaks per shift: one 30-minute break and two 15-minute breaks. (*Id.* ¶ 8.) Won's son was scheduled to start school in early September 2019. (*Id.* ¶ 4.) To accommodate transporting her son to and from school, Won requested that Amazon modify her work schedule: Won offered to forfeit her two 15-minute breaks so that she could come in 15 minutes late and leave 15 minutes early three days per week. (*Id.* ¶¶ 6, 9, 10.) Won testified that prior to her termination, she spoke to three different Human Resources ("HR") employees at JFK8 about adjusting her schedule, to no avail. (*See* Won Dep. Tr. 100:23-105:19.) Amazon's records indicate that she requested a modification via a phone call with Amazon's Employee Resource Center ("ERC"). (*See* Def.'s Resp. to Pl.'s 56.1 Stmt. (Dkt. 65-64) ¶ 12; Sealed Won PeopleSoft Profile (Dkt. 66-7) at 4-5.) The

notes from Won's August 5, 2019 call with the ERC are as follows:

> Thank you for contacting the ERC regarding your School Accommodation Issue. Here is a quick recap of what we discussed on the phone.

> You had called in stating that you wanted to apply for an accommodation as you had to drop your son to school and wanted a 30 minute adjustment for three days in the week. So explained the School Accommodation policy and also helped you with the Self Service option and told you that an accommodation would be processed for you and not your child

> I am closing this HR Case however please feel free to open it and add a post if you need additional assistance on this issue.

(Sealed Won PeopleSoft Profile at 4-5.)

Won was scheduled to be on leave for military training from August 11, 2019 through September 6, 2019. (Def.'s 56.1 Stmt. ¶ 10.)[1] Amazon asserts that Won was scheduled to return to work on September 7, 2019. (*See id.* ¶ 11; Sealed Continuous Military Designation Not. (Dkt. 66-1) at ECF p. 5 ("You are scheduled to return to work on 09/07/2019 based on the information that was provided to the MyAmbassador team.").) Won disputes her return date, claiming that she was scheduled to return to work on September 8, 2019. (*See* Won Dep. Tr. 97:11-98:6 (testifying that she made a witness statement on the day she was terminated);

---

[1] Plaintiff asserts that during this period she took two military leaves of absence: one for training in Virginia from August 11, 2019 to August 22, 2019 and another leave from August 22, 2019 to September 6, 2019 to accommodate military orders instructing her to restore the training sites. (Pl.'s 56.1 Stmt. Opp. and Count. ¶ 10.) For the purposes of deciding the instant motions, the court need not and does not determine whether Plaintiff took one leave or two leaves.

Witness Statement Form (Dkt. 65-15) at 1 ("Upon returning from a Miliary Leave of Absence, I was scheduled to start back my regular shift on Sunday, 09/08/2019.").)

On September 6, 2019, Won used her Amazon identification card to bring her seven-year-old son through the secure revolving doors at the entrance of JFK8. (Def.'s 56.1 Stmt. ¶ 12.) Won was attempting to submit documentation to support her request to adjust her work schedule to accommodate her son's school schedule. (*Id.* ¶ 13; Pl.'s 56.1 Stmt. ¶ 30; *see* Won Dep. Tr. 113:25-114:4.) Won stopped at the security desk to drop off her phone per Amazon policy barring personal electronics at JFK8, and then walked towards the HR desk where employees speak to HR personnel. (Won Dep. Tr. 108:16-109:19.) While Won was waiting in line at the HR desk, a security guard approached her and told her that her child could not be inside the security perimeter. (Def.'s 56.1 Stmt. ¶¶ 15, 16 (stating that a security guard instructed Won that if she wanted to speak to HR with her son, she had to wait "outside past the revolving doors").) Although Won maintains that the security guard's instruction was vague, she complied and waited outside the revolving doors for approximately half an hour. (*See* Won Dep. Tr. 109:22-111:5; Pl.'s 56.1 Stmt. Opp. and Count. ¶ 17.) While Won waited outside the secure area, her son fell asleep in her arms and she then used her Amazon identification card to go back through the revolving doors with her son to ask if she could wait in the adjacent room to speak to HR. (Won Dep. Tr. 111:9-14, 112:2-10.) Security told her that she should not wait inside the security perimeter and eventually got her a chair to sit in while she waited outside the revolving doors. (*Id.* 112:12-23.)

After Won's second entry, Amazon HR employees Nela Deakova and Samiul Karim spoke to Won outside the facility regarding the security breach, and Deakova asked her to complete a witness statement that asked for "her name, her basic information, and

to explain a summary of what happened." (*See* Deakova Dep. Tr. (Dkt. 65-35) 12:23-13:19; Def.'s 56.1 Stmt. ¶ 20.) Neither Deakova nor Karim met Won before this day. (Def.'s 56.1 Stmt. ¶¶ 21-22.) Deakova and Deakova's supervisor, Tyler Grabowski, then conferred, reviewed the written statement, and determined that Won committed a Category 1 violation by bringing her son inside the security perimeter twice. (*See id.* ¶ 27; Deakova Dep. Tr. 44:9-16.) Deakova and Grabowski decided that termination of Won's employment was warranted under Amazon's Security Policy. (Def.'s 56.1 Stmt. ¶ 27.) Shortly thereafter, Deakova communicated this decision to Won. (*Id.* ¶¶ 28-29.) Amazon terminated its employment of Won that day and determined that she would not be eligible for re-employment at Amazon. (*See* Pl.'s 56.1 Stmt. Opp. and Count. ¶ 154.) Won could not appeal Amazon's termination decision because she had not been employed by Amazon for at least 90 days. (*Id.* ¶ 168.)

On June 24, 2020, Won filed the instant suit against Amazon. (Complaint (Dkt. 1).) On August 28, 2020, Amazon filed its Answer to the Complaint. (Answer (Dkt. 10).) The court later granted Won leave to amend her pleadings to change the named defendant from "Amazon.com Services, Inc." to "Amazon.com Services LLC." (March 23, 2021 Text Order (granting the parties' joint motion to amend the Complaint); *see* Am. Compl.) Won's Amended Complaint asserts five causes of action against Amazon: (1) caregiver discrimination and retaliation in violation of the NYCHRL (Count I), (2) uniformed service discrimination in violation of USERRA (Count II), (3) failure to reemploy in violation of USERRA (Count III), (4) military status discrimination in violation of the NYSHRL (Count IV), and (5) uniformed service discrimination in violation of the NYCHRL (Count V). (Am. Compl. ¶¶ 60-95.) The parties conducted discovery, and Amazon now moves for summary judgment on all five of Won's claims. (*See generally* Def.'s SJ Br.; Def.'s Reply in Supp. of Def.'s SJ Br. and Opp. to Pl.'s SJ Br. ("Def.'s Reply and Opp.") (Dkt. 65-65).)

Won opposes Amazon's motion for summary judgment and moves for partial summary judgment as to her caregiver discrimination and retaliation claim under the NYCHRL (Count I). (*See generally* Pl.'s SJ Br. and Opp.; Pl.'s Reply in Supp. of Pl.'s SJ Br. ("Pl.'s Reply") (Dkt. 65-66).)

## II.  LEGAL STANDARD

To obtain Rule 56(a) relief, movants must "identify[] each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). Movants are entitled to summary judgment if they "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 68 (2d Cir. 2024). A fact is material when it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Gayle v. Gonyea*, 313 F. 3d 677, 682 (2d Cir. 2002).[2] "For a genuine dispute regarding a material fact to warrant a jury trial, there must be sufficient evidence supporting the claimed factual dispute 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Goldberg v. City of New York*, No. 19-CV-4241 (GBD) (KHP), 2021 WL 4482149, at *3 (S.D.N.Y. Sept. 30, 2021) (quoting *Anderson*, 477 U.S. at 249). However, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

"The movant carries the burden of proving that no genuine factual dispute exists." *Arce v. Sovereign Indus. Grp. Inc.*, No. 19-CV-489 (NGG) (JRC), 2025 WL 102449, at *3 (E.D.N.Y. Jan. 15, 2025) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Even where, as here, there are cross-motions for summary judgment, "each movant has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor." *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988). In reviewing a summary judgment motion, the court reserves "all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004). However, the court need not draw any inference that is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). To defeat a motion for summary judgment, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007). Parties "cannot rely on inadmissible hearsay in opposing a motion for summary judgment." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985). The court relies on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to determine whether summary judgment is appropriate. *See Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003); *see also* Fed. R. Civ. P. 56(c).

## III. DISCUSSION

### A. Applicable Law

#### 1. USERRA

USERRA provides robust non-military employment protections for people serving in the United States military. USERRA prohibits employers from denying uniformed service members "initial employment, reemployment, retention in employment, promotion, or any benefit" based on that uniformed service. 38 U.S.C. § 4311(a). An employer violates this subsection if a person's uniformed service "is a motivating factor in the employer's action," unless the employer can prove that it would have taken that action absent the person's service. 38 U.S.C. § 4311(c)(1). Under USERRA, plaintiffs state a "prima facie case of discrimination by showing that [their] protected status was a substantial or motivating factor in the adverse employment action." *DeLeon v. Teamsters Loc. 802, LLC*, No. 20-CV-24 (RRM) (PK), 2021 WL 1193191, at *10 (E.D.N.Y. Mar. 29, 2021).

Furthermore, USERRA also protects uniformed service members who seek to enforce these protections from retaliation. *See* 38 U.S.C. § 4311(b). "An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter [38 U.S.C. § 4301 *et seq.*], . . . or (4) has exercised a right provided for in this chapter [38 U.S.C. § 4301 *et seq.*]." *Id.* An employer violates this subsection if an employee's actions taken to enforce USERRA protections "is a motivating factor in the employer's action," unless the employer can prove that it would have taken that action absent the employee's "enforcement action, testimony, statement, assistance, participation, or exercise of a right." 38 U.S.C. § 4311(c)(2); *Pfunk v. Cohere Comms., LLC*, 73 F. Supp. 3d 175, 189 (S.D.N.Y. 2014) (reasoning that after the plaintiff has met its burden, an employer may still "escape liability by showing, as

an affirmative defense, that it would have made the same decision without regard to the employee's protected status") (quoting *Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98, 106 (2d Cir. 1996)).

USERRA also provides specific protections to uniformed service members to protect their non-miliary employment upon their return from military service. Under USERRA, a person who is absent from employment by reason of her uniformed service "shall be entitled to the reemployment rights and benefits and other employment benefits of [USERRA]" provided that she give her employer "advance written or verbal notice," the absence "does not exceed five years," and she reports to work or submits an application for reemployment. 38 U.S.C. § 4312(a). The Supreme Court and the Second Circuit have reasoned that reemployment protections for servicemembers are to be "liberally construed for the benefit of those who left private life to serve their country." *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 175 (2d Cir. 2011) (quoting *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)). However, if an employer fires an employee for "legitimate, non-pretextual reasons" then "[the employer], of course, would not have [] a duty to reemploy" the employee under 38 U.S.C. § 4312. *Pfunk*, 73 F. Supp. 3d at 192.

### 2. NYSHRL

The NYSHRL similarly protects service members from discrimination. Under NYSHRL, it is unlawful for an employer, "because of an individual's . . . *military status* . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a) (emphasis added). A plaintiff alleging military status discrimination under the NYSHRL must "plead both an adverse employment action and facts supporting an inference of discrimination." *Mendoza v. City of New York*, No. 21-CV-2731 (LDH) (JRC), 2023 WL 2734792,

at *7 (E.D.N.Y. Mar. 31, 2023) (citing *Kopchik v. Town of E. Fishkill*, 759 F. App'x 31, 37 (2d Cir. 2018) (summary order)). If a plaintiff makes out a prima facie case of discrimination under the NYSHRL, "the burden shifts to the employer to offer some legitimate, nondiscriminatory rationale for its actions." *McDuffie v. Eli Lilly & Co.*, No. 4-CV-5995 (LTS) (HBP), 2009 WL 857069, at *5 (S.D.N.Y. Mar. 31, 2009).

### 3. NYCHRL

The NYCHRL protects several classes of persons from discrimination. Under the NYCHRL, it is an "unlawful discriminatory practice" for an employer, "because of the actual or perceived . . . *caregiver status*, [or]. . . *uniformed service*. . . of any person," to "refuse to hire or employ or to bar or to discharge from employment such person" or to "discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a)(2) & (3) (emphases added). The NYCHRL "affords protections broader than the [NYSHRL]," and "the provisions of the [NYCHRL] should be construed broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 884-85 (2013). NYCHRL plaintiffs "need not show that [they were] subject to an adverse employment action." *Mendoza*, 2023 WL 2734792, at *8. They "need only show differential treatment—that [they were] treated 'less well'—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009)). An employer is entitled to summary judgment on the grounds that it had "legitimate, non-discriminatory motives" for its conduct "only if the record establishes as a matter of law that 'discrimination played *no* role' in its actions." *Id.* at 110 n.8 (quoting *Williams*, 61 A.D.3d at 78 n.27) (emphasis in original).

### B. Won's Discrimination and Retaliation Claims (Counts I, II, IV, and V)

The court first addresses Won's discrimination and retaliation claims. Won asserts that she is a member of two protected classes because of her uniformed service and status as the caregiver for her adolescent son. (*See* Am. Compl. ¶¶ 17-19.) Won claims that she suffered "discrimination, retaliation, and harassment" based on her membership within these protected classes, in violation of USERRA, the NYSHRL, and the NYCHRL. (*See id.* ¶ 52.) Amazon argues that it is entitled to summary judgment as to these claims because Won cannot raise an inference of discrimination and the evidence shows that Amazon terminated her for a "legitimate, non-pretextual reason." (*See* Def.'s SJ Br. at 5-13.) Won opposes Amazon's motion in its entirety and argues that she is entitled to summary judgment as to her NYCHRL caregiver discrimination claim because Amazon's policy of providing scheduling flexibility for non-caregiving reasons but denying those accommodations to caregivers who request similar benefits for caregiving reasons violates the NYCHRL. (*See* Pl.'s SJ Br. and Opp. at 37-40 (opposing Amazon's uniformed service discrimination argument), 27-37 (opposing Amazon's caregiver discrimination and retaliation argument), 18-27 (arguing for summary judgment on caregiver discrimination and retaliation claim).) The court finds that there is no genuine dispute as to any material fact that Amazon did not unlawfully discriminate or retaliate against Won based on her caregiver status or uniformed service.

#### 1. Amazon did not discriminate against Won because of her caregiver status or uniformed service.

The court first turns to the evidence Won cites to support her discrimination claim. Won maintains that Amazon discriminated against her based on her caregiver status because the HR employee who told her that Amazon would not accommodate her schedule modification request was "very dismissive" and told

Won that accommodating her request would be "impossible." (Pl.'s 56.1 Stmt. Opp. and Count. ¶ 33 (citing Won Dep. Tr. 103:2-15).) Won testified that the employee suggested to Won that Won "could speak to fellow employees to inquire about possible childcare arrangements, and that if [Won] couldn't abide by the schedule then, that [Won] couldn't work" at Amazon. (Won Dep. Tr. 103:11-15.) An HR employee explained to Won that under Amazon's Temporary Schedule Adjustments Policy, a request for scheduling flexibility to accommodate her own school schedule would be approved, but her request for scheduling flexibility to accommodate her child's school schedule was denied. (See Def.'s Resp. to Pl.'s 56.1 Stmt. Opp. and Count. (Dkt. 65-63) ¶ 70; Def.'s 56.1 Stmt. ¶ 35.)

Won also notes that the Amazon HR employees who decided to terminate her were aware of her uniformed service and status as a caregiver at the time when they made the decision to fire her. (See Deakova Dep. Tr. 14:10-18 (testifying that Deakova and Grabowski reviewed Won's witness statement, which indicated that Won had entered JFK8 with her son in tow).) Won's manager and other Amazon employees knew about her military leave. Deakova and Grabowski, Amazon HR employees who were both involved in the decision to terminate Won, were aware of her military status at the time when they decided to terminate Won's employment. (See Sealed Amazon Correspondence (Dkt. 66-11) at ECF p. 3 (email notifying Grabowski that Won's military leave had been approved and stating that "[d]ue to . . . protections under USERRA, please do not take any adverse employment actions related to this leave of absence"); Witness Statement Form at 1 (Won noting that she was returning from a "Military Leave of Absence"); Deakova Dep. Tr. 14:7-13 (Deakova testifying that she reviewed Won's witness statement with Grabowski before deciding to terminate Won).)

Won also points to other instances of alleged uniformed service discrimination. (*See* Pl.'s SJ Br. and Opp. at 6-7.) On August 13, 2019, while Won was on military leave, the team at Amazon that tracks employee attendance accused Won of missing three consecutive shifts. (*See* Sealed Won PeopleSoft Profile at 10-11.) Amazon sent Won "No Call No Show / Pre Termination warnings" and deducted her unpaid personal time ("UPT") for those days. (*See* Sealed Amazon Correspondence at ECF p. 6.) However, when Won contacted Amazon regarding this error, the person Won spoke to informed Won by email that she had "contacted the data management team asking them to refund [Won's] UPT for the dates during [her military] leave." (*Id.*; *Id.* at ECF p. 12 (flagging to "Amazon Absence Management" team that Won was appearing on both the job abandonment report and leave of absence report).) Amazon subsequently updated Won's profile to reflect that she was indeed on military leave during the shifts that Amazon initially accused her of missing. (*See* Sealed Won PeopleSoft Profile at 11 ("8/15 – Pending LOA Coding, [Amazon associate] has approved LOA until 8/22").)

The court finds that Won cannot raise an inference of discrimination on any basis. *See DeLeon*, 2021 WL 1193191, at *10 (requiring that USERRA plaintiff show that uniformed service was "a substantial or motivating factor in the adverse employment action"); *Mendoza*, 2023 WL 2734792, at *7 (requiring that NYSHRL plaintiff "plead both an adverse employment action and facts supporting an inference of discrimination"); *Mihalik*, 715 F.3d at 110 (requiring that NYCHRL plaintiff "show differential treatment—that [she was] treated 'less well'—because of a discriminatory intent").

The evidence of discriminatory intent set forth by Won is so "slight" that no rational jury could find in her favor. *See Gallo*, 22 F.3d at 1224. Won's uncorroborated testimony that an Amazon employee was "very dismissive" of her request to adjust her work

schedule so that she could transport her son to and from school does not set forth a claim of caregiver discrimination that can survive summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999) (affirming district court's grant of summary judgment dismissing discrimination claim because plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination"). (*See also* Pl.'s 56.1 Stmt. Opp. and Count. ¶ 33.)

The only other evidence that Won cites to support her caregiver discrimination claim is the fact that Amazon provides scheduling flexibility to accommodate its employees' school schedules and religious observance, but not to accommodate its employees' caregiving responsibilities. (*See* Temporary Schedule Adjustments Policy at ECF pp. 1-4.) Won argues that Amazon had a duty to grant Won the same employee benefits (*i.e.*, flexible scheduling) to accommodate her caregiving needs to the same extent it grants the benefit for non-caregiving needs. (*See* Pl.'s SJ Br. and Opp. at 20.) Won points to the guidance from the New York City Commission on Human Rights ("NYCCHR") to advance her argument that she is entitled to summary judgment. (*See id.* at 20-22.) The NYCCHR Fact Sheet, which is titled "Protections for Workers With Caregiving Responsibilities," advises that "[a]n employer cannot provide certain benefits, like flexible scheduling, to some employees and refuse to provide the same benefits to employees who request them because of caregiving responsibilities." (NYCCHR Fact Sheet (Dkt. 65-56) at 1.) Won asserts that she is *not* requesting a reasonable accommodation. (Pl.'s SJ Br. and Opp. at 20.) Won argues instead that because Amazon "afford[s] other employees schedul[ing] accommodations for non-caregiving reasons," it follows that "its failure to provide the same benefit to Won is discriminatory." (*Id.*) If not discrimination, Won claims that she was terminated in retaliation for

requested scheduling flexibility. Won's argument is unpersuasive.[3]

While the court recognizes the difficult position that Won is in as the sole caregiver of her adolescent son, her caregiver discrimination claim cannot survive summary judgment even under the broad reading that the court affords plaintiffs bringing claims under the NYCHRL. *See Romanello*, 22 N.Y.3d at 884-85. Although the NYCCHR Fact Sheet purports to interpret the NYCHRL's provision protecting employees who are caregivers from discrimination, *see* N.Y.C. Admin. Code § 8–107(1)(a), that interpretation is not entitled to this court's deference. *See Fair Hous. Just. Ctr., Inc. v. Pelican Mgmt., Inc.*, No. 18-CV-1564 (ER) (OTW), 2023 WL 6390159, at *17 (S.D.N.Y. Sept. 29, 2023) ("[A]gency guidance like the Best Practices materials do not receive the deference accorded formal regulations adopted after notice and hearing procedures."), *aff'd*, No. 23-7348-CV, 2025 WL 251723 (2d Cir. Jan. 21, 2025) (summary order); *Schneider v. Feinberg*, 345 F.3d 135, 142 (2d Cir. 2003) ("[I]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference.").

---

[3] Reasonable accommodations require entities to deviate from generally applicable policy for certain groups when the accommodation is reasonable under the circumstances. *See Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 294 (E.D.N.Y. 2010) ("The NYCHRL defines a reasonable accommodation as 'such accommodation that can be made that shall not cause undue hardship.'" (quoting N.Y.C. Admin. Code § 8–102(18))). While evidence of an employer's failure to accommodate an employee's request may be relevant to the employee's reasonable accommodation claim, that evidence "does not indicate that the policy was motivated by discriminatory intent." *See CNY Fair Hous., Inc. v. WellClover Holdings LLC*, 738 F. Supp. 3d 175, 202 (N.D.N.Y. 2024).

The court rejects Won's argument because the NYCHRL does not require Amazon to provide her requested scheduling adjustment, and the NYCHRL's legislative history counsels against it. When the proposal to add caregivers to the list of protected classes under the NYCHRL was originally introduced in the New York City Council ("City Council"), it also included a requirement that employers provide reasonable accommodations to caregivers. *See* Proposed Int. No. 108, 2014-2017 Leg. Sess. (N.Y. 2014). At the City Council hearing where the proposal was first introduced, a representative of the NYCCHR testified that the proposal would represent a "real fundamental shift in workplace relations." Transcript of Hearing Before the City Council Committee on Civil Rights, 2014-2017 Leg. Sess. ("City Council Hr'g Tr.") 55:4-25 (N.Y.C. Sept. 21, 2015) (testimony of Dana Sussman, Special Counsel to the Office of the Chairperson at the NYCCHR). The City Council lauded the proposal, but expressed concern about the administrability of the reasonable accommodation provision. *See, e.g.,* City Council Hr'g Tr. 139:15-24 ("I'm sympathetic to the need[s] employees have, but how we figure out how to balance between that and how employers schedule and do their work we have to do together. . . . I think there's some work we'll have to do to . . . understand what we think the parameters of reasonable accommodation here should be.") (statement of Brad Lander, Council Member).

The NYCHRL requires employers to provide reasonable accommodations for some protected classes. *See e.g.,* N.Y.C. Admin. Code §§ 8–107(3) (requiring reasonable accommodations for religious observance), 8–107(15) (requiring reasonable accommodations for persons with disabilities), 8–107(22) (requiring reasonable accommodations for pregnancy, childbirth, or a related medical condition), 8–107(27) (requiring reasonable accommodations for victims of domestic violence, sex offenses, or stalking). However, the City Council ultimately declined to include the proposed reasonable accommodation provision for

caregivers when it decided to make caregivers a protected class of employees under the NYCHRL. *See* N.Y.C. Admin. Code § 8–107(1).[4] It would be untenable for this court to find that Amazon's policy allowing for schedule adjustments for employees under certain circumstances is therefore unlawful discrimination against people who request schedule adjustments for circumstances not covered under Amazon's policy. The court declines to read a reasonable accommodation provision for caregivers into the NYCHRL where none exists. Accordingly, the court finds no unlawful discriminatory intent in Amazon's denial of Won's request for a schedule adjustment to care for her son.

The court now turns to Won's uniformed service discrimination claim. Won's evidence of discrimination on the basis of her uniformed service is even weaker than the evidence supporting her caregiver discrimination claim. Won claims that Amazon wrongfully accused her of abandoning her shifts when she was on military leave, but the record shows that the adverse employment action she allegedly suffered—deduction of her UPT—was quickly reversed. (*See* Sealed Amazon Correspondence at ECF pp. 12 (reporting the error to Amazon Absence Management team), 13 (MyAmbassador team member reporting to Grabowski and others that she was "reaching [out to] the data team to correctly code and refund the UPT [Won] took during that time"). The fact that Amazon terminated Won while she was on military leave, standing alone, is insufficient to raise an inference of uniformed service discrimination because Amazon had a legitimate reason for terminating her. *See infra* Section III.B.4. No rational jury could infer discrimination where Won suffered no adverse consequence as a result of her uniformed service. *See Brady v.*

---

[4] When the NYCCHR announced that the NYCHRL had been amended, the NYCCHR's press release even noted that "[t]he law does not require employers to make special accommodations to caregivers outside the scope of company policy." (NYCCHR Press Release (Dkt. 65-59) at ECF p. 2.)

*Calyon Sec. (USA)*, No. 5-CV-3470 (GEL), 2007 WL 4440926, at *16 (S.D.N.Y. Dec. 17, 2007) ("Because plaintiff has failed to set forth any evidence from which a reasonable jury could infer that his termination was the result of an anti-military animus, defendants' motion for summary judgment on plaintiff's military status discrimination claim will be granted.").

Won also points to anecdotes of other employees who Amazon allegedly terminated for taking military leave. (*See* Pl.'s SJ Br. and Opp. at 7; Pl.'s 56.1 Stmt. Opp. and Count. ¶¶ 112-16.) Won cites her own deposition testimony and three declarations filed in another case concerning an Amazon facility in another state. (*See* Won Dep. Tr. 43:22-43:14 ("Q. Okay. He mentioned one [military leave of absence] to you. Does he still work at JFK8? A. Not that I'm aware. Q. As in you don't know or you don't believe he works there? A. I don't know."); Yasmine Mahone Decl. (Dkt. 65-42) (originally filed in *Mahone v. Amazon.com, Inc.*, No. 22-CV-594 (MJP) (W.D. Wash.)); Dain Olson Decl. (Dkt. 65-43) (same); Brandon Tole Decl. (Dkt. 65-44) (same).) However, Won's "anecdotes based on hearsay" do not create a genuine issue of material fact that would allow her claims to survive Amazon's motion for summary judgment. *See Burke v. Evans*, 248 F. App'x 206, 208 (2d Cir. 2007) (summary order affirming summary judgment for employer in discrimination case); *Esprit De Corp.*, 769 F.2d at 924 (reasoning that parties "cannot rely on inadmissible hearsay in opposing a motion for summary judgment"). And while the *Mahone* case is still pending before the Western District of Washington, that court denied the plaintiffs' motion for class certification under USERRA because "[p]laintiffs provide[d] no evidence" that Amazon applied its military leave policy in a way that disadvantaged employees because of their uniformed service. *See Mahone*, 2024 WL 3566131, at *9 (W.D. Wash. July 29, 2024). Nevertheless, Won's citation to the *Mahone* declarations are insufficient to defeat Amazon's summary judgment motion because unproven allegations in another case

19

are also "inadmissible hearsay." *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169-70 (2d Cir. 2014).

> ## 2. Amazon did not retaliate against Won because of her caregiver status or uniformed service.

Won's retaliation claim fails because it rests primarily on the temporal proximity between her termination and alleged protected activity. (*See* Pl.'s SJ Br. and Opp. at 26 (discussing the temporal proximity between Won's requests to adjust her schedule for caregiving reasons and her termination), 38 (discussing the temporal proximity between Won's military leave and her termination).) The Second Circuit has made clear that an employee's retaliation claim grounded in the temporal proximity between the employee's termination and the employee's protected activity is "insufficient to survive summary judgment." *Hale v. Vidal*, No. 22-2973, 2023 WL 7211909, at *1 (2d Cir. Nov. 2, 2023); *see El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (acknowledging that, without more, "temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext" in a retaliation claim under Title VII), *abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). Because the evidence of Amazon's intent to treat Won "less well" based on her uniformed service or caregiver status is virtually non-existent, her retaliation claim is grounded solely in the temporal relationship between her termination and her alleged protected activities. Won's deposition testimony regarding what another Amazon employee may have told her is not "hard evidence." *See D'Amico*, 132 F.3d at 149; *Esprit De Corp.*, 769 F.2d at 924; *Borzon v. Green*, 778 F. App'x 16, 19 (2d Cir. 2019) (summary order) (explaining that "the temporal proximity between [plaintiff's] termination and his lodging of the complaint, without more, cannot sustain . . . a finding" of "retaliatory animus"). Accordingly, Won's retaliation claim cannot survive summary judgment.

### 3. Amazon's explanation for Won's termination

The court now turns to the evidence on which Amazon relies to argue that it terminated Won for a legitimate, non-pretextual reason. Amazon cites its Security Policy, which says that a Category 1 security infraction includes "[g]ranting . . . access to a secured area utilizing another person's credentials" and "generally results in corrective action up to and including immediate termination." (Security Policy ¶¶ 4, 4.13.) Won testified that during her security training, Amazon "stress[ed] that [employees] shouldn't bring anybody else into the building." (Won Dep. Tr 84:4-9.) Won also admitted to using her "employee card" to enter JFK8 with her seven-year-old son and then repeating this action after security had already told her that her son could not be in the building. (*Id.* 67:12-18 ("Q. And you entered with yourself and your child? A. Correct. Q. Do you remember how you entered the building? A. I used my card, my employee card."), 73:21-24 ("Q. Did you reenter the facility through the revolving doors with your son a second time? A. I did."), 72:15-22 ("Q. And at that point, did you understand that Amazon had instructed you to not have your son with you inside of the revolving doors? . . . A. The security guard did. Q. Okay. The security guard. A. Yes.")

According to Won's contemporaneous witness statement and Deakova's deposition testimony, shortly after Won entered JFK8 with her son twice, Deakova explained to Won that she "had breached Amazon security by bringing [her] child into the facility and that, as a result, the next step was termination." (Witness Statement Form at ECF pp. 6-7; *see* Deakova Dep. Tr. 54:15-55:5.) Amazon's Investigation Summary Report prepared after the incident contains the same explanation: "[Karim] went into the building and returned with . . . Deakova, HR representative, who told [Won] that according to company policy[,] she had committed an infraction as [Won] used her badge to go in with her child. [Karim and Deakova] terminated [Won] [o]n the spot which left her shocked." (Investigation Summary Report (Dkt.

65-17) at 3.) Won responded to the news of her termination by noting that she "did not know that she could not bring her child in as the company policy does not specify it." (*Id.*) But the report ultimately concluded that "[t]he summary of evidence, analysis, and key factual findings prove that the termination of Caonaissa Won is substantiated due to violation of Amazon's General Security Guidelines therefore her termination stands." (*Id.* at 5.)

Amazon produced data on how it dealt with other employees alleged to have committed Category 1 security infractions at JFK8. (*See generally* Sealed Category 1 Security Infraction Data ("Infraction Data") (Dkt. 66-5).)

Amazon terminated the employees that used their Amazon credentials to permit someone not employed by Amazon to enter JFK8. (*See* Sealed Infraction Data.) However, Amazon gave final written warning to the five employees who allowed other Amazon employees to use their Amazon credentials to enter the building. (*See id.* at 1-2.) Most of these employees engaged in "tailgating," where an employee swipes their credentials at JFK8's revolving doors and permits someone who does not present their own credentials—or who does not have Amazon credentials—to enter the building after the first person swipes their credentials. (*See id.*)

    4.   Amazon terminated Won's employment for a legitimate, non-pretextual reason.

Even if Won satisfied her burden to raise an inference of discriminatory intent, which she has not, Amazon would still be entitled to summary judgment if it "offer[ed] some legitimate, nondiscriminatory rationale" for terminating Won. *McDuffie*, 2009 WL 857069, at *5 (discussing the burden-shifting scheme under the NYSHRL); *see Mihalik*, 715 3.d at 110 n.8 (discussing the burden-shifting scheme under the NYCHRL); *Pfunk*, 73 F. Supp. 3d at 189 (discussing the burden-shifting scheme under USERRA). The court finds that Amazon fired Won for a legitimate reason and had no discriminatory motive.

Amazon asserts that the reason it terminated Won's employment was not because of her caregiver status or uniformed service, but rather because "she brought an unauthorized person into an active fulfillment center, in clear violation of Amazon policy." (Def.'s SJ Br. at 7.) Won argues that Amazon's stated reason for her termination is pretextual. (*See* Pl.'s SJ Br. and Opp. at 32–35 (citing *King v. Aramark Servs. Inc.*, 96 F.4th 546, 565 (2d Cir. 2024) ("To show pretext, a plaintiff can point to weaknesses, implausibilities, inconsistencies, or contradictions in an employer's offered reason for its adverse action.")).

Won herself testified that she never heard anyone at Amazon say anything negative about the armed forces or about employees who had caregiving responsibilities or cared for children. (*See* Won Dep. Tr. 55:13-17, 128:12-18.) Amazon consistently offered one reason for Won's termination: she used her Amazon badge to bring her seven-year-old son into JFK8 twice, a Category 1 infraction under Amazon's Security Policy. (*See* Witness Statement Form at ECF pp. 6-7; Deakova Dep. Tr. 54:15-55:5; Investigation Summary Report at 3.) Won argues that she was treated "less well" than other employees because Amazon gave final written warnings to five other individuals who committed

23

access violations, (*see* Pl.'s SJ Br. and Opp. at 37-40), but that argument is unpersuasive because all of those individuals used their Amazon badges to allow *Amazon employees* into JFK8, (*see* Sealed Infraction Data at 1-2). None of those employees were accused to have brought a seven-year-old child into JFK8 twice in one day. Amazon's enforcement of its Security Policy to ensure employees do not bring their children into its warehouse is reasonable under the circumstances. Amazon terminated the other employees who used their Amazon credentials to bring someone who was not an Amazon employee into JFK8. (*See id.*) "The identical treatment of a non-military employee establishes that the same decision would have been made regardless of [Won's] military status." *Croft v. Vill. of Newark*, 35 F. Supp. 3d 359, 377 (W.D.N.Y. 2014). The court finds that Amazon's termination of Won was for a "legitimate, nondiscriminatory" reason. *See McDuffie*, 2009 WL 857069, at *5; *Mihalik*, 715 3.d at 110 n.8; *Pfunk*, 73 F. Supp. 3d at 189.

\*\*\*

In sum, the court concludes that there is no genuine dispute as to any material fact that warrants a jury trial on Won's discrimination and retaliation claims, and Amazon is entitled to judgment as a matter of law as to those claims. Fed. R. Civ. P. 56(a); *Kemp*, 117 F.4th at 68. Accordingly, Amazon's motion for summary judgment on Counts I, II, IV, and V is granted, and Won's cross-motion for partial summary judgment on Count I is denied.

### C.  Won's Failure to Reemploy Claim (Count III)

Won contends that Amazon's failure to reemploy her after her military leave of absence violates USERRA. (*See* Pl.'s SJ Br. and Opp. at 40-41.) Won's claim rests on the same evidence upon which her failed discrimination and retaliation claims rely. While USERRA provides employees participating in uniformed service with "reemployment rights and benefits," *see* 38 U.S.C. §

4312(a), the right to reemployment under USERRA has limits. When an employer has a "legitimate, non-pretextual reason[]" for firing an employee, "[the employer], of course, would not have [] a duty to reemploy" the employee. *Pfunk*, 73 F. Supp. 3d at 192. Because Amazon terminated Won for violating its Security Policy and without any discriminatory motive, *see supra* Section III.B.4, her USERRA claim based on failure to reemploy must also fail as a matter of law. Accordingly, the court finds that there is no genuine dispute as to any material fact that warrants a jury trial on Won's failure to reemploy claim, and Amazon is entitled to judgment as a matter of law as to that claim. Fed. R. Civ. P. 56(a); *Kemp*, 117 F.4th at 68. Accordingly, Amazon's motion for summary judgment on Count III is granted.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Amazon's motion for summary judgment and DENIES Won's cross-motion for partial summary judgment. The Clerk of Court is respectfully DIRECTED to enter judgment dismissing all of Won's claims and close this case.

SO ORDERED.

Dated:    Brooklyn, New York
          June 3̶4̶ 2025

                                    s/Nicholas G. Garaufis

                                    NICHOLAS G. GARAUFIS
                                    United States District Judge